IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TCC HISTORIC TAX CREDIT FUND VII, L.P., | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 11 C 8556 ) |
| LEVENFELD PEARLSTEIN, LLC, et al., | ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Levenfeld Pearlstein, LLC's (Firm), Defendant Kevin A. Sterling's (Sterling), and Defendant Darryl P. Jacobs' (Jacobs) motion to dismiss. For the reasons stated below, the motion to dismiss is granted in part and denied in part.

## BACKGROUND

Plaintiff TCC Historic Tax Credit Fund VII, L.P. (TCC) alleges that in 2007, it agreed to invest in the development of a hotel (Hotel) being undertaken by WexTrust Equity Partnership, LLC (WexTrust). In exchange for its investment, TCC would allegedly receive tax credits generated by the historic rehabilitation of

1

the Hotel. To facilitate TCC's investment, TCC and WexTrust allegedly agreed to form Gold Coast Master Tenant, LLC (Tenant LLC), which would lease the Hotel and serve as master tenant. Tenant LLC was allegedly not responsible for the rehabilitation of the Hotel, but was allegedly responsible for purchasing furniture, fixtures and equipment for the Hotel and for marketing expenses. Under the terms of the Tenant LLC Operating Agreement (Operating Agreement), TCC was allegedly the "Investor Member" of Tenant LLC, and another company, Gold Coast Master Tenant Manager, LLC (Tenant Manager LLC), was allegedly the "Managing Member" of Tenant LLC. Tenant Manager LLC was allegedly wholly owned and controlled by WexTrust. Sterling and Jacobs, both attorneys at the Firm, allegedly represented Tenant Manager LLC and WexTrust in the transaction relating to the creation of Tenant LLC.

  Before the transaction relating to Tenant LLC closed, TCC allegedly reached an agreement with Defendants that TCC would fund its investment in Tenant LLC by depositing $1,062,188.00 (Investment Funds) into the Firm's client trust account via wire transfer. Defendants allegedly acted as escrowees of the Investment Funds, and upon receipt of the wire transfer, Defendants were allegedly required to distribute a portion of the Investment Funds to Tenant LLC, to distribute a portion of the Investment Funds to the title company involved in the transaction, and to distribute a portion of the Investment Funds to the Firm as payment for the Firm's legal services. The alleged agreement relating to the holding and distribution of the Investment Funds was allegedly evinced in a letter from Sterling dated December 21, 2007

(December 2007 Letter) and in a Disbursement Statement signed by the Firm and Tenant Manager LLC (Disbursement Statement). On December 21, 2007, allegedly in reliance on the December 2007 Letter and the Disbursement Statement, TCC wired the Investment Funds to the Firm's client trust account.

According to TCC, none of the Investment Funds were ever distributed to Tenant LLC. Instead, the portion of the Investment Funds that was supposed to be distributed to Tenant LLC was allegedly distributed to some other corporate entity owned and controlled by WexTrust, and such finds were allegedly misappropriated and used for purposes other than operating Tenant LLC. TCC includes in its amended complaint negligence claims (Count I), breach of contract claims (Count II), negligent misrepresentation claims (Count III), breach of fiduciary duty claims (Count IV), tortious interference claims (Count V), promissory estoppel claims (Count VI), and an accounting claim (Count VII). Defendants now move to dismiss all claims.

## LEGAL STANDARD

In ruling on a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) (Rule 12(b)(6)), the court must draw all reasonable inferences that favor the plaintiff, construe the allegations of the complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. *Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 622 (7th Cir. 2012); *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir.

2002). A plaintiff is required to include allegations in the complaint that "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'" and "if they do not, the plaintiff pleads itself out of court." *E.E.O.C. v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)(quoting in part *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007)); *see also Morgan Stanley Dean Witter, Inc.*, 673 F.3d at 622 (stating that "[t]o survive a motion to dismiss, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," and that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged")(quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009))(internal quotations omitted).

## DISCUSSION

I. Exhibits Attached to Defendants' Motion

TCC objects to Defendants' inclusion of the Operating Agreement and documents relating to receivership proceedings involving WesTrust (Receivership Proceedings) as exhibits to Defendants' memorandum in support of their motion to dismiss, contending that Defendants are not entitled to argue their version of the facts at the motion to dismiss stage of the proceedings. Defendants argue that the court may take judicial notice of the documents that TCC has objected to, and thus consider the documents without converting the instant motion into a motion for

summary judgment. Pursuant to Federal Rule of Civil Procedure 12(d) (Rule 12(d)), if the court considers matters outside the pleadings presented in a motion to dismiss brought pursuant to Rule 12(b), the motion "must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). Documents "are not 'matters outside the pleadings' within the meaning of Rule 12(d) if [they are] documents to which the Complaint had referred, [that are] concededly authentic, [and that are] central to the plaintiffs' claim," and therefore the court may consider such documents when ruling on a 12(b) motion without converting the motion to a motion for summary judgment. *Santana v. Cook County Bd. of Review*, 679 F.3d 614, 619 (7th Cir. 2012)(quoting *Hecker v. Deere & Co.*, 556 F.3d 575, 582 (7th Cir. 2009)); *see also Albany Bank & Trust Co. v. Exxon Mobil Corp.*, 310 F.3d 969, 971 (7th Cir. 2002)(stating that "the converse is also true: documents that are neither included in the plaintiff's complaint nor central to the claim should not be considered on a motion to dismiss"). In addition, at the motion to dismiss stage, the court may take "judicial notice of matters of public record," or in other words, "of facts that are (1) not subject to reasonable dispute and (2) either generally known within the territorial jurisdiction or capable of accurate and ready determination through sources whose accuracy cannot be questioned." *Ennenga v. Starns*, 677 F.3d 766, 773-74 (7th Cir. 2012)(citing *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1081 (7th Cir. 1997)).

    With respect to the Operating Agreement, TCC argues that it is not central to

TCC's claim "because TCC is not suing about anyone's failure to perform under it." (Resp. 3). Based on Seventh Circuit precedent, the court declines to take such a narrow view of the rule relating to documents that are central to the complaint. *See Hecker*, 556 F.3d at 582 (discussing the Court's liberal approach to the rule defining matters that fall outside the complaint). TCC alleges that "as a direct and proximate result of Defendant's [sic] actions, TCC never received any tax credits and was left holding a majority membership interest in a limited liability company having neither cash not tangible property derived from TCC's investment," thus preventing TCC from recovering any of its investment. (Compl. Par. 15). Based on TCC's allegations, not only does the Operating Agreement set the backdrop for the claims alleged, it is central to TCC's claims because it establishes the basis of the alleged damages in this case. Therefore, the court can consider the Operating Agreement in ruling on the instant motion without converting it to a motion for summary judgment.

With respect to the documents relating to the Receivership Proceedings, the court may take judicial notice of the fact that on September 11, 2008, the Hotel became part of a receivership estate, and the fact that on July 23, 2009, the Hotel was removed from the receivership estate based on the judge's findings in that case that the Hotel was "of no or inconsequential value to the receivership estate," and that "continued ownership of the [Hotel would] result in continued expenses to the receivership estate without any source of reimbursement." (Memo. Ex. 1, 5). Such facts indicate that, at least as of July 23, 2009, development of the Hotel was no longer viable. However, the court may not take judicial notice of the facts asserted in

the Receiver's motion to relinquish interest in the Hotel (Receiver's Motion), even if the Receiver's Motion was unopposed in the underlying case, without converting the instant motion into a motion for summary judgment. The court declines to convert the instant motion, and therefore, at this juncture, the court will not consider the evidence presented by Defendants relating to the reasons that development of the Hotel was no longer a viable option as of July 23, 2009. The court notes that at the summary judgment state of the proceedings, if Defendants are able to present sufficient evidence that their actions were not the proximate cause of WexTrust's failure to develop the Hotel, TCC will be foreclosed as a matter of law from recovering damages relating to any monetary amounts that TCC allegedly lost by virtue of failing to receive tax credits from the project, and TCC will be limited to recovering only the amount of money that TCC can show it would have possessed and/or recovered had Defendants properly distributed the designated Investment Funds to Tenant LLC.

II. Breach of Contract Claims

Defendants argue that TCC's breach of contract claims fail, contending that the pleadings, which the parties agree include the December 2007 Letter and the Disbursement Statement, reveal that no escrow agreement existed between the parties. The Seventh Circuit has stated that "[a]n escrow is defined as: A legal document (such as a deed), money, stock, or other property delivered by the grantor, promisor or obligor into the hands of a third person, to be held by the latter until the

happening of a contingency or performance of a condition, and then by him delivered to the grantee, promisee or obligee." *F.D.I.C. v. Knostman*, 966 F.2d 1133, 1140 (7th Cir. 1992); *see also Albrecht v. Brais*, 754 N.E.2d 396, 399 (Ill. App. Ct. 2001)(stating that "[a]n escrow is defined as a written instrument that, by its terms, imports a legal obligation, and that is deposited by the grantor with a third party to be kept until the performance of a condition or happening of an event, at which time it is to be delivered to the grantee," and further stating that the "true purpose [of an agreement] must be determined from the relations of the parties and their respective rights and duties")(citation omitted).

      TCC argues that there was an escrow agreement between the parties, and in support of its argument TCC cites several cases in which lawyers were found to be acting as escrow agents, including *Melrose Park Nat'l Bank v. Carr*, 618 N.E.2d 839 (Ill App. Ct. 1993), and *F.D.I.C.*, 966 F.2d 1133. However, the facts in the above-cited cases are distinguishable from the facts presented in the instant action. Unlike in the cases cited above, the pleadings in the instant action show that the Investment Funds were not being held by Defendants "until the happening of a contingency or performance of a condition." *F.D.I.C.*, 966 F.2d at 1140. Thus, the definition of an escrow is not met in this case, which leads the court to conclude that the pleadings do not plausibly suggest that there was an escrow agreement in place between the parties.

      TCC alleges that Defendants' receipt of the Investment Funds was the "triggering event" for release of the Investment Funds. However, TCC has presented

no case law to suggest that delivery of the escrow property to the escrow agent appropriately constitutes the future contingency or condition that triggers release of the escrow property. To put it simply, when Individual A gives money to Individual B with the understanding that Individual B will, in turn, give the money to Individual C, an escrow agreement does not arise. Instead, for an escrow agreement to exist, there must be some future contingency or performance upon which delivery of the escrow property is conditioned. TCC has failed to allege such a contingency or condition, and the pleadings taken in their entirety do not suggest that there was one.

      TCC argues that Illinois Supreme Court Rule of Professional Responsibility 1.15 (Rule 1.15) establishes that an attorney becomes an escrowee whenever he holds other people's funds. However, Rule 1.15 relates to "property of clients or third persons" being held by a lawyer "in connection with legal representation," and provides that such property must be kept "separate from the lawyer's own property." Ill. Rs. Prof'l Conduct R. 1.15. This is not a case in which property was given to Defendants solely in connection with legal representation, nor a case alleging that Defendants failed to keep such funds separate from their own personal funds. Therefore, Rule 1.15 does not apply to this case. *See* Ill. Rs. Prof'l Conduct R. 1.15, comment 5 (stating that "[t]he obligations of a lawyer under this Rule are independent of those arising from activity *other than rendering legal services*," and providing, as an example, that "a lawyer who serves only as an escrow agent is governed by the applicable law relating to fiduciaries even though the lawyer does not render legal services in the transaction and *is not governed by this*

*Rule*")(emphasis added). Based upon the above, the court grants Defendants' motion to dismiss the breach of contract claims.

III. Existence of Duty

Defendants argue that TCC's claims for negligence, negligent misrepresentation, breach of fiduciary duty, and for an accounting should be dismissed, contending that TCC has failed to plausibly suggest that Defendants owed a duty to TCC. To state a claim for negligence, negligent misrepresentation, or breach of fiduciary duty, a plaintiff must allege facts to plausibly suggest that the defendant owed a duty to the plaintiff. *See Glade ex rel. Lundskow v. United States*, 692 F.3d 718, 722 (7th Cir. 2012)(stating that "[t]here is no tort of negligence without a breach of a duty owed the victim by the tortfeasor"); *Swearingen v. Momentive Specialty Chemicals, Inc*., 662 F.3d 969, 972 (7th Cir. 2011)(stating that "[t]o establish a claim for negligence under Illinois law, a plaintiff must prove the existence of a duty of care owed by the defendant to the plaintiff," that "[w]hether a duty is owed presents a question of law," and that "[w]here there is no duty owed, there can be no liability")(citations omitted); *F:A J Kikson v. Underwriters Laboratories, Inc*., 492 F.3d 794, 801 (7th Cir. 2007)(indicating that under Illinois law, one of the elements of a negligent misrepresentation claim is "a duty on the part of [defendant] to communicate accurate information"); *Gold v. Vasileff*, 513 N.E.2d 446, 448 (Ill. App. Ct. 1987)(dismissing fiduciary duty claim brought against an attorney after finding that no duty was owed to plaintiff). In addition, to state a claim

10

for an accounting, a plaintiff must successfully allege either that there is no adequate remedy at law or that the defendant owed a fiduciary duty to plaintiff. *See Mann v. Kemper Financial Companies, Inc*., 618 N.E.2d 317, 327 (Ill. App. Ct. 1992)(stating that "[a]lthough equitable remedies are denied when there is an adequate remedy at law, there is an exception for when an accounting action is sought based upon a breach of a fiduciary duty so that a plaintiff may proceed with the action")(citation omitted).

TCC alleges in the amended complaint that Defendants represented WexTrust, the party adverse to TCC, in the transaction relating to Tenant LLC. Such an allegation suggests that Defendants had no duty to TCC. *Schechter v. Blank*, 627 N.E.2d 106, 109-10 (Ill. App. Ct. 1993)(discussing the rationale for the general rule in Illinois "that an attorney owes a duty of care only to his client and not to third parties," and noting the narrow exception that an "attorney owes a duty to a third party only where the attorney was hired by the client specifically for the purpose of benefitting that third party")(citations omitted); *Gold*, 513 N.E.2d at 448 (stating that, in general, an attorney "owe[s] no fiduciary duties to the [party adverse to his client], and if [such party] reposed trust and confidence in [opposing counsel], it was unreasonably placed and could not be the basis for an equitable type of action founded on breach of a fiduciary [ ] relationship")(citation omitted).

TCC argues that Defendants owed it a duty based on the escrow agreement between the parties. However, as the court has discussed above, the pleadings do not plausibly suggest that there was an escrow agreement between the parties. TCC also

argues that Rule 1.15 creates a duty on Defendants' part. However, as indicated above, Rule 1.15 does not apply to the facts of this case. Since TCC has not alleged facts to plausibly suggest that Defendants owed a duty to TCC, TCC has not stated valid claims for negligence, negligent misrepresentation, or breach of fiduciary duty. In addition, since TCC has not alleged that there is no adequate remedy at law or facts to plausibly suggest a fiduciary duty, TCC's claim for an accounting also fails. Therefore, the court grants Defendants' motion to dismiss the negligence, negligent misrepresentation, breach of fiduciary, and accounting claims.

IV.  Tortious Interference Claim

Defendants argue that TCC's claim for tortious interference should be dismissed, contending that TCC has not alleged facts to plausibly suggest: (1) that Defendants are third-parties, (2) that Defendants committed intentional or unjustified interference, or (3) that Defendants' conduct terminated any expectancy of TCC. To state a claim under Illinois law for tortious interference with a prospective advantage, a plaintiff must plead facts to plausibly suggest "(1) a reasonable expectancy of entering into a valid business relationship, (2) the defendant's knowledge of the expectancy, (3) an intentional and unjustified interference by the defendant that induced or caused a breach or termination of the expectancy, and (4) damage to the plaintiff resulting from the defendant's interference." *Adelman-Reyes v. Saint Xavier University*, 500 F.3d 662, 667 (7th Cir. 2007)(citations omitted). In addition, a plaintiff must allege that the defendant interfered with a business expectancy

12

between the plaintiff and a third party. *See Ali v. Shaw*, 481 F.3d 942, 945-46 (7th Cir. 2007)(stating that "[t]he third-party requirement for tortious interference with prospective economic advantage has been reiterated by the lower courts of Illinois as recently as 2005," and discussing the fact that a claim for tortious interference is appropriate only in cases of "outsiders intermeddling maliciously in the contracts or affairs of other parties")(citations omitted).

TCC argues that, by virtue of Defendants' alleged status as escrowees, WexTrust and Tenant LLC became third-parties. However, as discussed above, there was no escrow agreement between the parties. In addition, TCC has alleged that Defendants represented WexTrust and Master Tenant LLC in the transaction relating to Tenant LLC. Based on that allegation, the third-party requirement is not met in this case. Nor has TCC plausibly suggested that Defendants' conduct caused a breach or termination of the expectancy. As Defendants point out, TCC has not alleged that Defendants' actions prevented TCC and WexTrust/Master Tenant LLC from consummating the transaction establishing Tenant LLC. Based on the above, TCC's claim for tortious interference fails. Therefore, Defendants' motion to dismiss the tortious interference claim is granted.

## V. Promissory Estoppel Claims

Defendants argue that TCC's claims for promissory estoppel should be dismissed, contending that such a claim is unavailable because TCC has alleged the existence of an express contract and contending that Defendants did not make an

13

unambiguous promise to TCC. To state a claim for promissory estoppel under Illinois law, a plaintiff must allege facts to plausibly suggest that "(1) defendants made an unambiguous promise to plaintiff, (2) plaintiff relied on such promise, (3) plaintiffs reliance was expected and foreseeable by defendants, and (4) plaintiff relied on the promise to its detriment." *Dumas v. Infinity Broadcasting Corp.*, 416 F.3d 671, 676-77 (7th Cir. 2005)(internal quotations omitted)(citations omitted).

TCC pled its promissory estoppel claims as an alternative to the breach of contract claims, which is proper under the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 8(d)(permitting a party to "set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones . . . regardless of consistency"); *Cromeens, Holloman, Sibert, Inc v. AB Volvo*, 349 F.3d 376, 397 (7th Cir. 2003)(stating that "[u]nder [the doctrine of pleading in the alternative], a party is allowed to plead breach of contract, or if the court finds no contract was formed, to plead for quasi-contractual relief in the alternative"). In addition, TCC has alleged, and the documents attached to the pleadings do not conclusively refute, that Defendants unambiguously promised to disburse certain Investment Funds to Tenant LLC, that TCC relied upon such promises before wiring Investment Funds to the Firm, that Defendants expected and foresaw TCC's reliance, and that TCC was harmed as a result of its reliance on Defendants' promises. Such facts are sufficient to state a promissory estoppel claim, and Defendants' motion to dismiss the promissory estoppel claim is therefore denied.

## VI. Claims Brought Against Sterling and Jacobs

Defendants argue that the claims brought against Sterling and Jacobs should be dismissed from the instant action, contending that Sterling and Jacobs were acting solely as the Firm's disclosed agents. Since the only remaining claim in this case is the promissory estoppel claim, the court need only determine whether Sterling and Jacobs are proper defendants as to that claim. TCC concedes that Sterling and Jacobs are not properly-named defendants on the breach of contract claim, since they were acting as agents of the Firm. (Resp. 13). Promissory estoppel is a quasi-contract claim. *Cromeens*, 349 F.3d at 397. Therefore, the status of Sterling and Jacobs as disclosed agents of the Firm remains controlling on the issue of whether they can be held personally liable on the claim. *See Degen v. American Ass'n of Oral and Maxillofacial Surgeons*, 1994 WL 13754, at *3 (N.D.Ill. 1994)(indicating that "[u]nder Illinois law, an agent of a disclosed principal will not be held liable for commitments made on behalf of that principal," and that exceptions to this rule are not applicable to contract or quasi-contract claims). Based upon the above, Defendants' motion to dismiss the promissory estoppel claims brought against Sterling and Jacobs is granted.

## VII. Motions to Strike

Defendants also move to strike the amended complaint, to strike certain claims as duplicative, and to strike TCC's request for attorneys' fees and costs. Pursuant to Federal Rule of Civil Procedure 12(f), "[t]he court may strike from a pleading an

insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). In the first instance, Defendants failed to present sufficient justification to warrant striking the amended complaint, and therefore Defendants' motion to strike the amended complaint is denied. In addition, based upon the court's ruling on the breach of contract claims, the court need not consider Defendants' motion to strike certain claims as duplicative, and therefore that motion is denied as moot. Finally, TCC's request for attorneys' fees and costs was made in connection with its request for punitive damages. TCC is not entitled to recover punitive damages on the promissory estoppel claim brought against the Firm, which is only remaining claim in this case. *See, e.g.*, *Leyshon v. Diehl Controls North America, Inc.*, 946 N.E.2d 864, 87 (Ill. App. Ct. 2010); *BMC Products v. HMK Group Companies, Inc.*, 1986 WL 13535, at *3-4 (N.D. Ill. 1986). Therefore, Defendants' motion to strike TCC's request for punitive damages, including reasonable attorney's fees and costs, is granted.

## CONCLUSION

Based on the foregoing analysis, Defendants' motion to dismiss is granted with respect to the negligence, breach of contract, negligent misrepresentation, breach of fiduciary duty, and tortious interference claims, the claim for an accounting, and the promissory estoppel claims brought against Sterling and Jacobs. Defendants' motion to dismiss is denied with respect to the promissory estoppel claim brought against the Firm. In addition, Defendants' motion to strike the amended complaint and Defendants' motion to strike certain claims as duplicative are denied. However, Defendants' motion to strike the request for punitive damages, including reasonable attorneys' fees and costs, is granted.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: November 27, 2012